## Roberts et al. v. Applegate.

1. *Warranty—What Constitutes.*—A. sold a stallion to R. Pending the bargain R. asked for the pedigree. A. handed him a catalogue, telling him that the pedigree of the horse was on page seven. When he asked about the horse being a sure foal getter, A. answered that there was no doubt about that, that the catalogue contained all that was necessary for him to say about that. As to the quality of the horse as a foal getter the statement in the catalogue was, "He will attract attention anywhere and make his mark as a foal getter." It was held that this was by no

means a warranty that the horse would attract attention or prove a foal getter, but was only an expression of the belief of the seller as to what might be expected of the horse in the future.

Memorandum.—Mortgage foreclosure in chancery. Writ of error to the Circuit Court of Hancock County; the Hon. CHARLES J. SCHOFIELD, Circuit Judge Heard in this court at the May term, A. D. 1892, and affirmed. Opinion filed October 17, 1892.

## PLAINTIFF'S STATEMENT OF THE CASE.

On the 5th day of December, 1890, James T. Applegate filed his bill in chancery in the Circuit Court of Hancock County, to foreclose a mortgage dated April 5, 1883, given by the defendants, Stephen E. Roberts and Nancy E. Roberts, his wife, in which they conveyed to Applegate certain real estate in Hancock County, Illinois. The mortgage was given to secure two promissory notes for the sum of $750 each, one due on or before one year after date, and the other due on or before two years after date, with seven per cent interest after date. The annual interest was paid on both of said notes to April 5, 1889.

The bill of complaint alleges that the full amount of the principal of both of said notes and the interest thereon from April 5, 1889, remained unpaid. The defendants answered the bill saying that the two notes were given for the stipulated price of an English shire stallion, sold by Applegate to Roberts. That Applegate stated to said Roberts and contracted and agreed with him that the stallion was a pure bred, eligible to registration, registered full-blooded English shire stallion, and was an ordinary sure foal getter. That said stallion was recorded and registered in volume 4 of English Cart Horse Stud Book, under the name of "Young Wonder," and by virtue of his record in said stud book, entitled to the name of "Young Wonder" No. 2957.

That said stallion was not eligible to registration; was not a full-blooded, registered and recorded English shire stallion at the time defendant bought him, and was not re-recorded, registered, pedigreed and numbered in said English

Cart Horse Stud Book, as claimed and represented by said Applegate; that he was not eligible to such registration, recording, pedigreeing and numbering.

That he was not an average sure foal getter; that by reason of the facts aforesaid the said stallion was not worth to exceed one hundred dollars.

And that by reason of the false statements of said Applegate, aforesaid, he is not entitled to the relief prayed for in his said bill.

The complainant then by an amendment to his original bill denied the warranty and breach thereof, and stated that if such warranty was made it was verbal and not in writing, and was entered into more than five years prior to the commencement of this suit; that such claim of warranty is barred by the statute of limitations.

The defendants then amended their answer and stated that such alleged contract was and is in writing.

To this answer of defendants, as amended, the complainant filed his general replication. On those issues the cause was tried by the Circuit Court, a decree rendered for the full amount of said notes, and $100 solicitors' fees and costs of suit, and the land described in the mortgage ordered sold to satisfy said amounts.

*Page 7 of Mr. Applegate's catalogue referring to the horse:*

"YOUNG WONDER, Vol. 4, E. C. H. S. B., Lot 7, Shire Horse, brown, face and right hind ankle white; foaled 1880.

Bought of R. Mendham, St. Edmonds, Lincolnshire, Eng.

SIRE.—Thumper (Clark's) (2136); see pedigree Thumper 2d.

DAM.—By Wiseman's Wonder (2357), by Matchless (1509). See in Mistakes' pedigree, lot 5.

G. DAM.—By Farmer's Glory.

Here, again, we have a strong, powerful colt, large size, with bone enough and to spare, if such a thing were possible; fine feather and good action. He will attract attention anywhere, and make his mark as a foal-getter."

*Page 33 of Vol. 4, English Cart Horse Stud Book. List of the horses, names and numbers, imported by James T. Applegate:*

APPLEGATE, J. F.

| STALLIONS. | BREEDER. | |
|---|---|---|
| Cromwell, Junior (2753) | R. Porter, | Vol. IV. |
| Magnet (2830) | T. H. Miller, | Vol. IV. |

Roberts v. Applegate.

| STALLIONS. | BREEDERS. | |
| --- | --- | --- |
| Model Tom, Jun. (2843)..........................Daniel Lewis, | Vol. IV. | |
| Sensation Again (2898)..........................R. A. Crow, | Vol. IV. | |
| Stamp of England (2917)..........................W. Taylor, | Vol. IV. | |
| Wonder of the East (2957)..........................R. Mendon, | Vol. IV. | |
| MARES. | | |
| May Flower....................................T. H. Miller, | Vol. IV. | |
| Molly ..........  ..................................T. H. Miller, | Vol. IV. | |

## PLAINTIFF'S BRIEF.

Whether there was an express warranty or not, there was an implied warranty, from which the defendant in error can not escape.

Plaintiffs in error purchased the horse in question for a particular purpose. Defendant in error, the seller, knew this fact at the time.

In Benjamin on Sales, Vol. 2, p. 867, Sec. 993, it is said : " If a man buy an article for a particular purpose, made known to the seller at the time of the contract, and rely upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose."

In the case of White v. Miller, 71 N. Y. 118, 131, it is held that on a sale of seed there is an implied warranty that " the seeds sold were free from any latent defect arising from the mode of cultivation."

A manufacturer who sells a steam boiler impliedly warrants that it is made of sound material and good workmanship. Beers v. Williams, 16 Ill. 69.

J. L. BAILEY and O'HARRA, SCOFIELD & HARTZELL, attorneys for plaintiffs in error.

## DEFENDANT'S BRIEF.

The warranty relied on by plaintiffs in error is not in writing, because a contract can not be partly in writing and partly in parol, and they must resort to parol evidence to establish the defense relied upon in this case; and their attorneys only claim that " the statements and representations upon which the horse was bought and sold were in the

main contained in Mr. Applegate's catalogue." The state-
ment in the catalogue as to the horse being a foal-getter
was a mere expression of opinion, and Applegate had a
right to extol the superior qualities of his horse. Fauntle-
roy et al. v. Wilcox et al., 80 Ill. 477.

The defense appears to be an attempt to rescind the con-
tract on account of fraud. But he must rescind at the time
he discovers the fraud, and this he did not do. He must put
Applegate in *statu quo* by a return, or an offer to return the
horse. Smith et al. v. Doty, 24 Ill. 163; Bowen et al. v.
Schuler, 41 Ill. 192; Morgan & Co. v. Thetford, 3 Brad. 323.

NEECE & SON, attorneys for defendant in error.

OPINION OF THE COURT, *the Hon. Carroll C. Boggs, Judge.*
This was a bill in chancery filed by the defendant in error
to foreclose a mortgage given April 5, 1883, by plaintiffs in
error to secure two notes, each for $750, one due April 5,
1884, the other April 5, 1885, both bearing interest at seven
per cent per annum. The defense interposed was that the
notes were given for a stallion sold by Applegate to Stephen
E. Roberts, with a warranty that the stallion was an ordi-
nary foal-getter, and a pure bred English shire horse, under
the name of Young Wonder, No. 2957, and entitled to that
name and number, and that such warranty was broken.

The Circuit Court found the issues for the defendant in
error and rendered a decree accordingly, to reverse which
this writ of error was sued out.

The statements and representations relied upon to con-
stitute the alleged warranty are mainly to be found in a
printed catalogue issued by the defendant in error. Rob-
erts testified that when he asked for the pedigree of the
stallion (then a colt of the age of three years), Applegate
handed him a catalogue and told him that the pedigree of
the horse was on page 7, and that when he asked "about
the horse being a sure foal-getter," Applegate replied,
"there was no doubt about that and the catalogue con-
tained all that was necessary for him to say on that subject

as well as to the pedigree of the horse." Roberts testified to some verbal statements of Applegate, which met a direct denial from Applegate, and were at most, even if deemed proven, but mere expressions of opinion as to the future of the animal. Applegate told Roberts that the pedigree and registration of the colt would appear in the 4th volume of English Cart Horse Stud Book, when that volume was issued as it appeared in the catalogue. This 4th volume was issued in 1883, and did contain the pedigree and number of the colt as did the catalogue, but the Stud Book gave the name as "Wonder of the East" while the name given in the catalogue is "Young Wonder." The breeder of the colt was given in the catalogue as "R. Menshaln" and in the Stud-Book, as "R. Mendon." These discrepancies, together with testimony tending to show that this horse was not a sure foal-getter, were relied upon as constituting a breach of the warranty.

It was clearly proven that the colt sold to Roberts was the identical animal registered in the Stud Book, and had the pedigree, age and number there given. That he was bred by "R. Mendon" and that Applegate purchased him from Mendon in St. Edwards, Lincolnshire, England. That the name Menshaln in the cataloge was a mere error in spelling the name of the breeder, and that Applegate believed when he issued the catalogue that the true name of the colt was "Young Wonder" as there given. This mistake as to the name of the colt, if important, was known to Roberts some years before the filing of the bill. He paid the interest upon each of the notes annually from 1883 to 1889, during several years of which period he knew of the error in the name of the horse. He finally disposed of the horse in a trade for another stallion without having ever complained to Applegate of any failure of the warranty. We think there is no merit in this branch of the defense.

As to the quality of the horse as a foal-getter the statement in the circular is—

"He will attract attention anywhere and make his mark as a foal-getter."

# 182 APPELLATE COURTS OF ILLINOIS.

This is by no means a warranty that the "colt would attract attention" or prove a "foal-getter" but is and only purports to be an expression of the belief of the seller as to what might be expected of the horse in the future.

The decree is right and must be affirmed.